This appeal stands for the generally accepted principle that the defense needs to know and have notice of a district court if a district court is going to utilize information that's outside of their record as part of its sentencing decision and have a meaningful opportunity to review that information. This is grounded in due process, Rule 32, and this Court's precedent in Loveless. Was that specific objection made? We did not have the chance. Once it came up, once the topic came up, Judge, you failed to give us notice. We'd like a continuance. First, the first time that the Jason was referenced and the data was referenced was towards the end of the sentencing. It was on page 46. So we've already accomplished the majority of the sentencing by that point. And no, I did not ask for a continuance, but I did ask the judge the very specific question that would have been at the heart, whether he was comparing or Jason was comparing similar cases to Mr. McDaniel. Jason has two components. There's a guidelines component that looks at a total offense level for the relative guideline you're looking at in criminal history category, comes to a guidelines range, but then there's a corresponding 924C. But those are two different objections, right? Well, we didn't have notice that when I asked the question, he told me all defendants had an 84-month 924C sentence. But your argument here is I didn't get notice before I came to court. And my question is, was that the basis of any objection to the district court? No, but when I asked the question, I was indicating to him what we were looking for, which is comparing Mr. McDaniel to similar defendants. I understand, but those are apples and oranges. Correct. But there's a second issue about using the data incorrectly. Sure. And I don't think there's a question there that I would have been able to fact check or correct the judge on the spot. I had to accept what he was telling me at the time. Is there an argument here that it might be harmless because it came at the end of the sentencing hearing after a lot of the work had already been done? No, Your Honor, I don't believe so. Because if you look at the sentencing transcript, the district court is infusing this data throughout the transcript. I didn't at least realize it at the time. But when you go to the transcript on page 32, he mentions Kimbrough and the need for national consistencies with sentencings. On page 34, when he's discussing the joint recommendation with the prosecutor, he's asking her whether she considered national sentencing data. And then on page 39, he's talking about the need to avoid sentencing disparities for similarly situated defendants, 3523A6. Now, he doesn't mention what the data is or the source of that data. It's not until page 46, which is towards the end, that's the first time he mentions what these figures are and that the source was this judicial tool, which was rather novel by that point. So if you look at the totality of the transcript, he's referring to this over and over. And he's using it to cabin both Supreme Court directive in his opinion under Kimbrough and a 3523A factor. And when you look at when he imposes that sentence, he talks about, again, page 46, the first time he references what the data and the numbers show and the source of it. He then confirms that he's using that data for not only Kimbrough's directive, but also for 3523A6 to sentence for similarly situated defendants. And then at the end... Thank you. So the first statement he made was a misstatement because, you know, the JSON tool does not allow you to differentiate, as you say, between 60, 84 and 120 month negative sentences. But then he immediately comes back and says something that's correct, which is, here's the search I did one. So what do we do when you have a misstatement followed by what appears to be a correct or specific statement? Do we reverse? Do we make the statement as a whole? What do we do? Your Honor, I believe this requires reversal. And the reason why that second statement he made does not correct the first statement that every 924C sentence was a consecutive 84 months. He said at least one 924C. That does not address the length of the 924C. And there's also a 300-month 924C. And we did see that in that data set. So that would have been important information for me to know because when you have a 300-month 924C, that's obviously going to skew those guideline figures on that tail end of it. So, Your Honor, as I said, the sentencing court definitely used this data. It used it to cabin both Kimbrough 3553A, 6. And we did not have notice of it. Well, what's the prejudice to the appellant? The prejudice to Mr. McDaniel? Yes. Well, first, we don't believe that plain error applies specifically because of the lack of notice with respect to the factual error. But even if it does, we believe it's prejudicial. For example, this court under Harrell and Stokes, when you're looking at cases that involve district courts relying on evidence outside of the record, the court looks to see whether it's a principal basis for the sentencing decision. And when you have a transcript like we have, Your Honors, where the district court is referencing it implicitly several times, I didn't realize what it was, but implicitly referencing it, and then explicitly referencing it, and then directly tying it both to Supreme Court directive that he says needs to follow, and 3553A, I believe that is a principal basis at a minimum. And he chose a sentencing figure that was one month shy of the reported median. The reported median was 180 months. The sentence we had was 179 months. The district court also, though, talked at great length about the defendant's characteristics and history and the facts of this case. So why doesn't U.S. v. Shell suggest it's harmless? I don't believe it's harmless because in U.S. v. Shell, first of all, they don't talk about a Rule 32 violation at that point. And in Shell, the issue there, which was about 924C guideline career offenders, they said it was a passing reference. In here, as I explained, if you look at that transcript, it's woven throughout. It's repeated. It is not a passing reference. He grinds it in both Supreme Court precedent and 3553A. I just wanted to address briefly the government's contention that this was not an error because it was public information, and that it wasn't a notice issue because it was public information. A lot of things are public. If you go on the Internet, the Sentencing Commission, there's just reams of data, reams of statistics. True, at the point of this sentencing, that tool was pretty novel. It had been out for roughly five months. But if you go on that website, you're going to scroll and scroll and scroll and see a lot of data, and that's just one data point. You're going to see data throughout the course of the Internet. The Internet's quite vast. If you are going to follow the government's premise that anything public, as in on the Internet, is fair game without advanced disclosure, I think that's a bridge too far, and that's what Loveless checks against because it deprives the parties of any meaningful opportunity to comment on that information. When the government latches on to so-called public information that various courts found did not violate Rule 32, all that was still at least known to the defendant. They used a case called Bunkley, a Sixth Circuit unreported decision. In that one, they found that PSR referenced the fact there was an overdose death, so it could not have come as a surprise to the defendant that the judge in sentencing referred to this overdose death.  The defendant himself talked about drug dealing and his contributions to that problem as accepting responsibility for his role. If you look at Harris, another unreported Sixth Circuit opinion the government cites, that one was a statistic, but the defendant himself raised the statistic at sentencing. So I don't believe, Your Honor, that the dividing line is what's public versus private. It's what's known and not known, and I will reserve the remainder of my time. Thank you, Ms. Korenblatt. Ms. Wemkin. May it please the Court. I'm Cassie Wemkin, and I'm here on behalf of the United States of America. The district court sentenced carjacker Ryan McDaniel to the middle of his guideline range. That decision was steeped in the 3553A factors. While it was above the joint recommendation, it was well within the court's ability and authority to sentence Ryan McDaniel to the middle of the guidelines. McDaniel is ignoring virtually all of the court's 3553A factors. Instead, what we've just heard is the focus on one data point, a data point that the district court said was not dispositive. McDaniel's claim that this was somehow central to the court's decision is simply undermined time and time again by the record. Do you agree, though, that the district court didn't provide notice and made a mistake, at least in that initial statement when they asked, is this all 84-month consecutive, and it turns out that other data was included in that JSON search? I agree that the district court did not provide notice that it was going to consider that data, but I do not agree that the district court made a mistake. I believe they were simply talking past one another, but I believe that if we assume that the district court did make a mistake, that it still does not make a difference and it does not affect this defendant's substantial rights. This defendant did forfeit his objections, but even if he had not, I would also believe that it would be harmless error, Your Honor. And that's because... Now, just to follow up, I'm a little mystified by your response in one respect, which is it is absolutely crystal clear to me that the district court either made a mistake in answering the question or misunderstood the question, and that's fine. But the literal answer the district court gave has to be wrong because you literally cannot search for that on the JSON tool. I do agree with you, Your Honor, that literally it is wrong. I don't believe that the district court was actually making a mistake in interpreting the data because you literally did not search for it. That's what I meant by that. I don't believe that it was because you can't. And, in fact, when you go to that website, it is very clear right there, there's a section about what it means with the consecutive mandatory minimums. It says at least one 924C, so they have to have at least a 60-month sentence. And then when you go into the tool, you can only do at least one 924C. So I believe that they were talking past one another, but I believe that even if we assume, Your Honor, that there was some sort of misapplication, there's still no basis for reversal. Because when you look at what the court said in the sentencing transcript, it was a relatively brief discussion of the JSON data. He said, It's information. I consider it. And he then went into seven pages of a very in-depth sentencing transcript where this judge discussed the nature and circumstances of the offense as very, very disturbing.  Mr. McDaniel stopped the victim and threatened to shoot him. He then proceeded on a high-speed chase, which was lengthy and involved extremely dangerous conduct. McDaniel has a significant criminal history that gives me great concern. McDaniel's loss of acceptance of responsibility resulted in a corrections officer having a broken ankle. And, finally, there's substantial recidivism in this case. That's just a snapshot. Let me step in for Ms. Kornblatt. I think her answer would be the proof's in the pudding, which is the ultimate sentence ended up being one month less than the JSON data would suggest. How do you respond to that? Your Honor, I do understand that point. However, Judge Clark mentioned that he was considering all of the 3553A factors, that he was looking to all of that. And I think that we have to assume when a federal judge tells us that they have considered each of the factors and that this particular one is not dispositive, that, indeed, that is the case, Your Honor. This was a middle-of-the-guideline sentence. And, actually, Your Honor, in looking at the data, I think that if the data was broken out in the way that Ms. Kornblatt broke it out in her brief, where there's a section about those who have lost acceptance of responsibility, it's quite possible that when the judge looked at those numbers, where the defendants were getting sentences of over 200, he could have imposed an even higher sentence because this, too, was a... Well, for it to be reversible error, does it have to be a dispositive error of fact, or does it just have to be a significant legal basis or significant basis for the decision? Your Honor, it has to affect McDaniel's substantial rights here. And so I think here he would have to say there is a reasonable probability that he would have received a lighter sentence. And I don't think there's a reasonable probability that this defendant was going to receive a lighter sentence. I mean, it's obvious that the district court here felt that a much more significant sentence than the joint recommendation was in order, and he did support that sentence by examining in depth the 3553A factors here. And I don't believe that there was an error in the first place with regard to him not disclosing the Jason statistics, Your Honor. That is another point here. While Rule 32 does expressly require certain information, and this court has found it to implicitly require the disclosure of certain other material information, I also don't believe there was an error in the first place in considering these statistics. And if there was some sort of problem, there was no objection here, Your Honor. There was no... And in fact, Ms. Korenblatt at the sentencing actually invited the district court to consider another data point, other statistics. If we look at the transcript here, what the defendant was really asking at sentencing was that the district court just not use those statistics, but to use other statistics that McDaniel had cherry-picked. On page 35 of the transcript, McDaniel's counsel said, I have several recently single carjacking cases, as in just one carjacking. All of those clients got five years or under. I know you sentenced Tykeese Lofton in a two carjacking 924C case to time served. So at that point, and that's right after she says, I understand the issue with the mean and the median. However, I want you to look at these statistics. So while Ms. Korenblatt was up here trying to distinguish some of the Sixth Circuit cases, here saying, well, in those cases, the defendant used statistics, McDaniel also asked the court to use statistics. Those statistics were just cases that his counsel had personally experienced. They were other data points. And the district court here, he was used to using data points, too. His data points came from the United States Sentencing Commission's website here. So for that reason, too, I do not think there is any sort of error. And the Sixth Circuit cases that were discussed, in Lovelace, this circuit relied on United States v. Hayes. But the subsequent Sixth Circuit cases says it's a totally different matter when you have something like a judge's personal knowledge or you have undisclosed victim letters than when you have information like this. Don't you think, though, that, you know, I think you might be claiming too much. Because, I mean, ultimately, in my view, this is a novel tool. The JSON tool is novel. And so, arguably, the district court, I think it's maybe undisputed or you can dispute it, but probably should have disclosed the JSON tool, use of the JSON tool, because not a lot of people are necessarily familiar with it. So maybe there's a lot of contemporaneous objection. Maybe we're in plain air land. But at the very least, you don't think this violated getting notice ahead of time to counsel that I'm going to use this novel tool that maybe not a lot of people have seen before? No, Your Honor. I do not think that it noticed it. Of course, any attorney is always going to want more information. But I think when we look at Becker and we look at other cases, there's simply not support for saying that any information conceivably whatsoever should be there. It's material information. And the case law is really talking about defendant-specific information as opposed to statistics here, which is what we have at the case. I do understand that JSON at the time was relatively new. Sentencing statistics in and of themselves are not. And I don't think there's support for extending that to this. But ultimately, even if there was some sort of Rule 32 violation, and I don't believe that there was here, it simply does not matter because even if we applied a harmless error standard, which I don't think applies here, but even if we did, it simply would not make a difference. Well, let me ask you this. Isn't it just good policy, at the very least, to disclose it? Because the fact of the matter is, and I'm not saying that Ms. Kornblund would have done this, but she could have run her own search and realized and said to Judge Clark, actually there's no way it could have just been the 84 months because I ran the search and there is no way to drill down on the numbers quite that much. Wouldn't that have been a helpful thing to happen at sentencing? I don't think any of us would have been dissatisfied with getting noticed that that was it. We always want insight into the inner working of a judge's mind. That is something that would always be appreciated, but that doesn't mean it's required and that doesn't mean it's unfair because the statistics were out there and if there was some sort of problem, there could have been a, hey, can I have a continuance objection to that, and that just didn't happen in that case. So we don't know. I'm guessing there probably would have been a continuance if that sort of objection had been made at that time. So while I am sure that Ms. Kornblatt, like myself, would always like to know exactly what a judge is going to consider, that just does not mean it's required. And I see that I am past my time. May I please briefly conclude? Yes. We would simply ask that this Court affirm the district court's decision. Thank you. Thank you, Ms. Williamson. The government mentioned Becker, a case from this circuit. There, the circuit held there was no violation and it was not plain error because the district court expressly said that they were not considering the information at issue there. Here, it's the exact opposite. The judge said he was considering it. He mentioned it several times throughout the transcript and he tied it to a Supreme Court directive and congressional directive. The government also mentions that this is the middle of the guideline range. Basically, so there's a perception it's reasonable. I assume that's their point. In Hayes, what Loveless relied on, Hayes is a Sixth Circuit opinion, the fact that the district court there didn't depart because of the information doesn't mean that the district court did not rely on it. It could still nevertheless be material. And here, it is material. But under plain error, what's the analysis as to whether or not there's a reasonable likelihood of a lesser sentence? If I had the opportunity, if I knew that the district court was incorrect, that not every one of those defendants had an 84-month sentence, I could have gone through the raw data, which we did in our brief, and shown the district court pulling out just those with the 84-month sentence. Twenty of those people had an 84-month sentence. The median there was 168 months, nearly a year difference. So I think there would have been a reasonable probability that I could have talked to the judge and convinced him perhaps that the numbers he's using were skewed too high, and that could have resulted in a different sentence for Mr. McDaniel. Thank you. Thank you, Ms. Kornblatt. Thank you to both counsel for participation in argument before the court this morning. We consider it helpful, and we'll continue to review the case and render a decision in due course. Thank you.